Good morning, Your Honors. Stephen Warren of O'Melveny & Myers on behalf of Fannie Mae, appellant, lender, and defendant in the matter below. Your Honors, the appeal here consists of one single issue of federal law. It is uniquely and exclusively federal, and the court approaches it with de novo review. And that is, what is the impact, if any, of the federal bankruptcy discharge on the accrual and running of the statute of limitations to foreclose in Washington? Said another way, does the discharge constitute a new maturity date? Does it, and for that to be the case, certain elements would have to be present as a result of the discharge. It would have to terminate all of the future payments. It would have to cause those future None of these things are true, and consequently the answer to our single question is no. The discharge has no effect on the accrual of the statute of limitations. All it does is render the obligation nonrecourse. It eliminates the ability to reach in personum. So when these folks receive the water bill, what were they supposed to do? They were supposed to pay it? Your Honor, with respect to the water bill, whether they have an obligation to the water company, I don't know. That would be I mean, there's certainly a world in which they do. Do they have an obligation, do they have any obligation under Washington law or under any federal law to sort of maintain the property for Fannie Mae, so that by turning off the water, turning off the gas, turning off the electricity, they may be spoiling the property? Do they have an obligation to maintain it for you for whenever you decide to do it, between now and 2042? Your Honor, I guess what I'd say to that is I don't know what the underlying obligations would be between them, but what I can say is whatever those obligations are, they were established under Washington law, whether or not there was a discharge. It's clear under Washington law, without a discharge, the statute of limitations can run for 30 years. That is a consequence of Washington law. The question here is whether the discharge changed that. Whatever the ambient rules were between the parties, who's responsible for paying the water bill, those things exist. Why is it a matter of federal law when Washington gives effect to the implication of mortgages under Washington law? In other words, this is Washington sort of recognizing the federal judgment and giving it a particular meaning in Washington. How does that interfere with any federal law? Well, Your Honor, Washington establishes what the ambient rules are for an installment contract, and it has. They run from each installment. There's no dispute about what the Washington statute would apply absent a discharge. The only question is whether the discharge changed that. If there had been no bankruptcy, there's no question what the result would be. The statute has not run. Sure. But why isn't this a matter of Washington law? You characterized this, I think, very smartly, as a matter of federal law so that we could get de novo review. I don't understand any federal law that's at issue here. The effect of a bankruptcy, that has to be dealt with by a whole variety of parties, public and private. And the effect of it seems to me to be of no interest to the Bankruptcy Court. You respectfully know, Your Honor, I think the core of the bankruptcy is what the discharge is, the meaning of the discharge. Federal rules establish what that effect is. What happened here was the Court treated the discharge as having been a termination of installment contract payments. It doesn't do that. That is a uniquely Federal question. And there is an intense Federal issue in terms of what happens with the discharge. If Washington were able to, and I do not believe it has established a rule that in bankruptcies we'll have a different statute of limitations than we do absent a bankruptcy, but if they did have that power, could the Washington legislature meet and say, we don't like bankruptcy discharges? So is this a matter of – are you arguing that there's an issue of Federal preemption here? Well, there's no – Your Honor, there are two pieces. There are two pieces. One is that Washington does not have a rule that in a bankruptcy there's a different statute of limitations. The two cases that were cited, they're clearly dicta. There's no difference between the bankruptcy and non-bankruptcy. And indeed – But Washington law does say, if Edmondson v. Bank of America has any validity at all, that the statute of limitations for each subsequent monthly payment accrued on the last day of the month until Edmondson's no longer had personal liability under the note. Your Honor, I think if we deconstruct what happened in Edmondson, the lender cited Silver's – Well, I understand what that's – I understand what you're about to say. But my problem is if I look at this and I say Edmondson's no longer had personal liability under the note, then I look at what happened in this particular situation, they had no longer personal liability under the note after the discharge. Your Honor, for that to be the case, there are a myriad of different ways an obligation can become nonrecourse, right? It can be a bankruptcy discharge, or the parties could agree at the beginning of the transaction that the borrower doesn't have personal liability. There are other circumstances where there's no personal liability. Then why isn't this just a 6-year statute of limitations on an in-rem action? Because the 6-year statute of limitations runs from each payment that accrues. Whether it's recourse – Payment of what? The installment. Each installment continues to come due. So your view is that the bankruptcy discharge of past payment requirements and of future payment requirements still were in existence? Your Honor, the – It doesn't – Do you agree or disagree with that statement? Well, Your Honor, I would say it a little bit differently. I would say that all of the obligations continue to accrue. They're just in-rem. The Jarvis's have no liability. My question is different than that. Is it your position that the payments up to discharge were wiped out, forgiven, and all future payments still are in existence? No payments were wiped out. Okay. No payments? No payments were wiped out. They exist. They continue to be owed. If the debtor hasn't paid the amount, it was – But they're only owed in-rem. Your only action is in-rem, which is a State remedy. Why can't Washington say actions in in-rem are good for 6 years? And if you don't do anything in that time, then the debt is done. Your Honor, I think, first of all, Washington hasn't said that, because a foreclosure action is always in-rem. We've cited cases. It's – there is no – there is no in-persona moment. It's hard for me to read Walker and Edmondson and the other Washington cases and conclude that that's not true. Well, Your Honor, let's take a look at Gibbon, for example. I mean, that's another – and Herzog itself. I mean, these are all in-rem causes of action that are being brought. The foreclosure action is always in-rem. It's never in-persona. So in – But there has to be something to trigger the right to exercise your rights. That is correct. That is correct. And that's where we come back to the discharge. Did the discharge stop installments from running? Installments of what? What is the former debtor to do post-discharge? Well, Your Honor, as the cases indicate – Henry, for example – the debtor may continue to make the payments. If it reaffirms the debt, it continues to make payments. No, we have to – It may renegotiate the debt and make payments. No. It may pay off. There are four things the debtor can do. They can surrender the property to the secured debtor. Didn't happen. They can redeem the property by paying the fair market value. Didn't happen. They can reaffirm the debt. They didn't do that. Or they can ride through the bankruptcy. They did that. And Enri Parker says, when you ride through the bankruptcy, you continue to make the payments without reaffirming the debt. It allows the debtor to retain the property with no personal liability. But when the debtor doesn't make a payment, the creditor can foreclose. And in this instance, the debtor made no payments. And so at that point, the creditor could have foreclosed. And Washington says, you've got to do it within the last payment that had to be made. And therefore, the six years runs. That's the way Parker, a federal case, would suggest it would run. Your Honor, I think actually the obligations continue to accrue. And the lender may – Wait a minute. That's not what Parker says. Distinguish – tell me why Parker says that. Parker says, yes, you can continue to make your payments. But it says when the debtor doesn't make the payments, then the creditor can foreclose. And Washington law says, if you haven't got that done within six years, you can bring a quiet title action. But remember that each one of those payments on an installment accrues and sets the limitation period anew. Well, there is no reason to go – I mean, that would suggest that under Washington law, if in fact there were no bankruptcy and they didn't pay, ever pay, that your client should be able to foreclose if the term is for 30 years, wouldn't need to foreclose until 30 years, even though they never paid. That is exactly what Washington law is. That is not what Washington law suggests. Your Honor, the debtor can be in default for many more years than the limitation period. I think we do cite Washington law for – But Washington Revenue Code 728300 says, a property titleholder may quiet title against a mortgage or deed of trust when an action to foreclose such mortgage or deed of trust would be barred by the statute of limitations. The statute of limitations says that on a written contract, it is six years and that a deed of trust is such a contract. Therefore, if you don't foreclose, you're done. But only as to the installments that have accrued. What Herzog says, what Gibbons says, we get a new statute of limitations each time an installment comes due. The statute may pass as to that particular installment, but what you were saying, Your Honor, is that an installment contract is treated just like a demand obligation. The first time there is a default, then the mortgage holder is obliged to foreclose. In the Fujita case that we cite, for example, the court notes that a mortgage may be in default for more than six years. Because each time an installment comes due, there is a new statute that comes into effect. So Your Honor is right, with respect to an installment that accrued on more than six years ago, the right to foreclose and the right to collect that particular installment is gone. But what Herzog says, and what the other Washington cases that we cite, including Gibbons say, is that as long as there is a continuing installment, each installment begins anew another. The question is, does the discharge of bankruptcy change that general law? That's the issue. I don't know. I wouldn't argue with that proposition. That's throughout the United States, I think. I think that's right. I ask you, within six years, your position is, was it 20 years to run on the mortgage? That's right. Let's say 20 years later, you decide to foreclose. Your position is you have that period because there's a 20th year installment that wasn't paid. OK. What would the mortgage judgment look like? What's the amount due? Your Honor, that's a great question. Thank you. I'm sorry. The issue is that there is a consequence to the running of the statute of limitations as to the installments. There may be installments for which the limitations period is passed. So if the installment came due seven years before, the lender can't collect that installment. It's gone. But all of the installments that came due within six years, and every installment that remains to come due, will trigger the statute anew. It is a shrinking obligation. That's the law absent a discharge. That's the law absent a discharge. Again, it comes back to, does the discharge change the landscape? Well, let's look at what the decision seems to suggest. That's the case. Seemingly, this is a case where I think we all know why this happened. Fannie Mae was a successor, an interest to somebody who was a successor, interest down the road. And they just fell asleep at the wheel. Well, Your Honor, whatever the reason was, whether it was conscious or unconscious, we think it's the, unless this, the appellate filed this lawsuit to acquire title, this never would have come up. They would have lived there for the next 30 years or whatever, and you never would have done it? Well, I don't know that that, I don't know that that's right. But, but, Your Honor, irrespective, what's very clear is that the, the, the federal bankruptcy discharge doesn't accelerate obligations, doesn't cancel obligations. All it does is make them in rem, non-recourse. It would be no different than if Fannie Mae agreed at the inception with the borrower, that it would be a non-recourse obligation. That wouldn't cancel the future obligations. Washington doesn't impose a different rule than the, the, the plaintiff cited none, that as a general proposition, a non-recourse debt has a different statute of limitations. If that were true, it would mean when a purchaser acquired a property subject to the mortgage, but didn't assume it, there would be a different statute of limitations. That's actually, given there was an assignment. Counsel, I want to point out, you ended in a very, very different place from where you started. You started by telling us this was a matter of Federal law, and we had de novo review. And you're now talking to us exclusively about Washington law because we dragged you there. But I don't, I didn't, I didn't see any place in there that there was really any role for Federal law, other than the fact of bankruptcy. Well, Your Honor, it, it. I asked you about the, I asked you about preemption. You told me there was no preemption problem. So I'm, I'm not sure what the, I'm not sure where the de novo review of Federal law comes in. No, it is, it is, Washington law is preempted to have a different rule pre-bankruptcy versus post-bankruptcy. Your Honor, the, the discharge, it is indeed, and I was addressing Your Honor's questions. Does it interfere in some way with Federal bankruptcy? Absolutely. Is there a particular law that I, I need to be looking at, the Federal law? The ride-through doctrine can't work. The discharge, the, the Bankruptcy Code section 524J, for example. So you're arguing that this does interfere with the ride-through? Absolutely. Okay. Well, that's a, that's a, that would be, that would be preemption. And, and yes, it is. You told me that there wasn't preemption. Well, no, Your Honor, what I, what I was saying is I don't think Washington has a different law, but it is definitely preempted. If Washington were to impose a different result here, it would be preempted. It is barred. That's the MSR decision. The, there may be issues of State law that are relevant, but ultimately, to have a different rule on the debtor-creditor relationship is preempted. It is barred. I don't think Washington has a different law. If it did, it would be preempted. That is what I meant to say, Your Honor. Okay. All right. We've, we've peppered you with questions. I'm going to give you a minute for rebuttal, but you're over your time. Thank you, Your Honor. May it please the Court, my name is Loren Combs, representing the Jarvis's. I don't think there's a federal question here, other than there was a bankruptcy involved. The State statutes are always looked to in these sorts of cases to give the court the answer to what it should or should not do, and it starts back in the 1800s with a case cited by the appellants called Long v. Bullard, 117 U.S. 617. It's cited at their brief, their opening brief at 15. And I'd like to read to you what the court actually said, as opposed to what counsel said it said in their brief. At 621, the court said the Supreme, referring to an earlier case, this was a foreclosure case, lien foreclosure case, the Supreme Court actually held, and here's the quote, the dispute in the court below was as to the existence of the lien at the time of commencement of the proceedings in bankruptcy. That depended entirely on state law, as to which the judgment of the state court is final and not subject to review here. That's what that case held. The state of Washington, as to its statute of limitations, very succinctly tells the story of what the statute of limitations is all about in the Stenberg case cited in our brief at page 11. In Washington, this is at page 714, in Washington, the goals of our limitation statutes are to force claims to be litigated while pertinent evidence is still available, and while witnesses retain clear impressions of the occurrence. Our policy is one of repose. The goals are to eliminate the fears and burdens of the actual, of the threatened litigation and to protect a defendant against stale claims. So, counsel, I'm curious about a couple of things. Yes. Your clients are, you know, went into bankruptcy, stopped making payments and are going to end up with a free house. So why were they, why did they still have a water bill coming? Well, that's a good question. Did they have an obligation? Did they feel that they had an obligation? Did they actually have an obligation under Washington law to maintain it for the bank? Well, here's the interesting part on these facts, Your Honor. Remember, the client, before bankruptcy, stopped making payments and said, bank, look, we can't make the payments. Please come take the house. We're moving out. And they moved out. And they moved out. So they're not in the house. So the whole right-through argument is a red herring. Are they back in the house now? I couldn't tell you if they're back there today, but when they started getting notices from a governmental agency that they're responsible for a bet, a debt, they moved back in because they started getting concerned that, holy cow, if something goes wrong and this is all in our name, and they moved back in. Did they receive, did they, were there any other payments they were obligated to pay? I mean, they weren't obligated to pay the property taxes on it, were they? Property taxes were in their name, Your Honor. That's how come we could use the second statute to come before this court and acquire a title, because we are the owner of records. My clients were the owners of records. This bank slept on their rights. Whether they did it intentionally or not, that's the issue here. The bankruptcy, the state law is clear. Herzog set the state law on this. And there's numerous appellate court cases that say the same thing, including Edmondson. But what state law says is, hey, when the obligation accrues for the payment on the debt, so prior to bankruptcy, it doesn't matter whether it's in bankruptcy or not. Judge Layton ruled in a bankruptcy and a non-bankruptcy case. Judge Kuhnauer from the Western District ruled in a similar set of facts, except he held, hey, it didn't run. The six years didn't run. But he still applied the six years. It's when the cause of action accrued on the underlying debt, that's when the statute of limitations starts to run. All bankruptcy does is it passes through bankruptcy. The deed of trust is still there, but attached to it is the running of the statute of limitations, which is determined solely by state law. This isn't a federal question at all. The same rules apply. It's just bankruptcy happened. If this were in Florida. Mr. Warren says the effect of the bankruptcy was to take a recourse loan and make it non-recourse, that installments still were out there, even though there was no personal liability for that. So that under generally accepted Washington law, I think probably every state in the union, every time an installment payment's not made, the statute begins to run again. And at the tail end, after six years expires, those prior installment payments are eliminated. But that's his view, right? What's your response to that? My response to that is, if he were a Supreme Court justice in the state of Washington or in the Court of Appeals, the decisions would have read differently than they do today. Because that is not the law in the state of Washington. It may continue, but the statute of limitations started. But Edison didn't quite hit on this specific issue, did he? It was close, but that was kind of dicta at best, don't you think? No, I don't think. It was central to the case. Remember, the Edison case broke it into two parts. This is in the second part. It's critical of the case, and the judge below looked at it that way as well. And all the Ninth Circuit court cases that I could find, including the ones cited by the appellant, seem to not disagree with what I'm telling you today, including the cases that were just cited by the appellant, which I would like to spend a couple minutes talking about. But what's really important is what the state of Washington does with its statute of limitations statute. Because in Florida, which I think is worth looking at, Florida adopts just what you said in their statute of limitations. Because it's a state law issue. In Florida, it's cited in the Alvarez case, cited by counsel in their reply brief on page four, the statute of limitations in Florida reads as follows, if the record of the mortgage shows that it secures an obligation, payable installments, and the maturity date of the final installment of the obligation is ascertainable from the record of the mortgage, the statute of limitations shall run from the maturity date of the final installment. So in Florida, we would have a different result. We would have a different result in a lot of cases, because this is a state law question, not a federal law question. The federal courts have humored the states, if you will, by allowing them to decide this question. But what Your Honor indicated was in Florida, yes, I would agree with you, because that's what their statute of limitations says. Well, you said that Edmondson was right on point. But the decision that court made was not necessary, because the statute wouldn't have run under either interpretation. But the law was the same. Remember, the law is... The facts were different. The facts were different. But the law was the same. If it's a state court issue or state law issue, should we certify it to the Supreme Court? No. And in fact, that's interesting, because in the Silver case, that was the motion that was before the court. And the Silver court said, the state law for the state of Washington is so clear on this, that we're not going to send it back to the state court. So there is no question about what Washington law is, except that the bank seems to want to make new Washington law and wrap it up under an alleged federal issue on messing with 524J, which is not applicable here anyway. Because this case, this decision, state law does not affect a ride-through case, if ride-through on real property were existing today. We're not in possession for a ride-through to take effect. I thought your client was living in the house. At the time all of this happened, he was not in the house. But you couldn't tell me whether he's living in the house today, and you told me they moved back. No, I can't tell you whether they're living in it today. When they started getting the notice two or three years after bankruptcy was over, was discharged, the house was vacant for two to three years. They then, they had moved out before the discharge. But they moved back before the six years ran. They moved back when they started getting done letters from a governmental agency. OK, so they are in possession. Or at least they were at some point during the running of the statute of limitations. Yes, but remember, on a ride-through, there was no contact with the bank. They asked the bank to cut a deal with them. I don't mean to remind you of the facts. But the facts there, because you know them well, but the facts there, they approached the bank, said, hey, we can't afford to do this. We'd like to work something out with you. Bank doesn't work anything out with them. They say, OK, we're walking away. We can't pay. We can't afford this house. Didn't the Jarvis's offer to give them a quick claim deed? They did. They offered to give them a deed in lieu in foreclosure. They offered to do that. They did everything they could to get this back in the hands of the bank. The bank does nothing. Jarvis's start getting done by another governmental agency and said, whoa, we've still got responsibility here. We better get back in there and take care of the house. I cannot tell you whether they're still in there today. But they weren't in there for two to three years. And that's not what a ride-through case is all about. It's where the debtor wants to stay in the house, agreed to stay in the house, and the bank acquiesced in the continued making of payments. This has no interference with that section of 524J. There's none at all. That's made up. Different fact pattern. That'd be a different argument if we were here today, perhaps. But the state law is clear that when the cause of action could, the last time the cause of action could be brought, whenever that cause of action could be brought, that's when the statute of limitation runs in this state, not in Florida. Might be different in other cases. The only reason I know about Florida is because the appellants put it in play in their brief. But I now know that in Florida, that is not the law in Florida. It is statutory-made law in Florida. In the state of Washington, it's judge-made law that interpreted the state statute. And the legislature has not overridden that long history of cases going back to HERSOF. So our position is, I don't know why I'm here, other than I have to be here. But there's no federal question here. State law is applied. Even though each state is different, the Supreme Court has acknowledged that it doesn't matter. It's a state law anyway. And the federal courts, even the Supreme Court, is not supposed to mess with that. It's a state decision. State law is clear. I have a couple minutes left, but I'm not going to ramble on unless you have more questions. No. I don't think there are further questions. Thank you. And the relief we want, of course, is for you to uphold what was done down below. We would like our attorney's fees as we pled in our down below and also in our briefs here. Thank you. Thank you, Mr. Combs. Mr. Warren. Thank you, Your Honor. Briefly, this is an issue of federal law, because as the Court noted, each installment begins anew a statute of limitations. And the only question is whether the discharge stopped the accrual of those obligations. It did not. As a matter of federal law, uncontroverted federal law. What if Washington actually had a statute that says if you obtain a Chapter VII discharge in bankruptcy, we will apply a 6-year statute of limitations on any in rem action? Would that interfere with bankruptcy law? Absolutely, Your Honor. The State cannot impose a different statute of limitations for as a result of a bankruptcy. That's the core element of what the discharge does. Think about what that would mean. What statute of limitations would be in effect? I mean, if we came in and struck that law down, what statute of limitations would be in effect? This exact same statute of limitations that would apply had it not gone under. But that's a Washington statute of limitations. How can the Washington statute of limitations? Well, Your Honor. There's no federal statute of limitations at issue here, counsel. No, Your Honor. But you would revert to exactly the statute of limitations that would have applied without a discharge. It's no different. It's absolutely no different. They cannot punish a debtor. They can't punish a lender by virtue of the discharge. There's no punishment. Your client had 6 years to figure this out and couldn't figure it out. But, Your Honor, it would be no different had there not been a debt. The idea, Your Honor, is it has to be the same whether there's a discharge or not. If there hadn't been a discharge, because of the discharge. Why? Washington is clearly treating the bankruptcy in the way that the Supreme Court has said it should. It's a discharge of personal debt. The in rem, the in rem remedies are not affected. And Washington says, as to those in rem remedies, when there's been a discharge, that's the start of the statute of limitations. Your Honor, foreclosure is an in rem remedy. It is always an in rem remedy. It is always the case in Washington law that a new statute accrues with each new installment, whether or not there's personal liability. But, Your Honor, the point is, if Washington had a rule, and it does not, that personal liability is required for installments to come due, if it had such a rule, it would be preempted. If it had a rule that we have a different statute of limitations, because you have a bankruptcy discharge, even though, without that special statute of limitations, the discharge, the limitations period would be exactly the same, would run until the last installment. We're well over your time. I do have one last question. I just want to make sure I understand your argument. So you would have, I believe it's to 2042, to close on that. That's the term of the contract plus the 6-year statute of limitations. Am I right on that? That would be the only time when a quiet, tidal action would lie. But there would be, but some of the installments would be gone. At some point there in 2041 or 2042, if the bank finally decided to get around here and foreclose, it would only be entitled to some $1,800 or $1,200 or whatever the month was by the time you get there, because all of the other things will be time barred. It's a diminishing asset. And at some point there, the Jarvis has owned the bulk of the home anyway. You've hit the nail on the head. There is a consequence to not having acted. There is a consequence. But the consequence is not that all of the mortgage is gone, that it's deemed as if there had been an acceleration. That's not the consequence of the bankruptcy. That's not the consequence of the discharge, Your Honor. Thank you. Thank you very much. We thank both counsel for the argument. Jarvis v. Fannie Mae is submitted, and we are adjourned for the day.
judges: Bybee, N.R. Smith, Huck